**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**


**CHERRON JACKSON**                                                              **PLAINTIFF**


**v.**                              **NO. 4:22-cv-00471-KGB-PSH**


**KILOLO KIJAKAZI, Acting Commissioner**                    **DEFENDANT**
**of the Social Security Administration**


<u>FINDINGS AND RECOMMENDATION</u>


<u>INSTRUCTIONS</u>


The following Recommendation has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Cherron Jackson ("Jackson") challenges the denial of her applications for disability insurance benefits and supplemental security income payments and does so on two grounds. First, Jackson maintains that the Administrative Law Judge ("ALJ") failed to comply with the remand order when he did not give good and specific reasons for discounting the treating professionals' medical opinions. Second, Jackson maintains that the ALJ erred when he relied upon a vocational expert's answer to an improperly phrased hypothetical question. Because substantial evidence on the record as a whole supports the ALJ's decision, and he committed no legal error, the undersigned recommends that his decision be affirmed and this case be dismissed.[1]

Jackson filed her applications in March of 2016. For the next seven years, they snaked through the administrative and judicial processes. Of particular note, the case was remanded in December of 2019. See Jackson v. Saul, No. 4:19-cv-00045-DPM, 2019 WL 7019076 (E.D. Ark. Dec. 19, 2019). The case has now returned for a review of the second ALJ's decision.

---

[1]    The question for the undersigned is whether the ALJ's findings are supported by substantial evidence on the record as a whole and not based on legal error. See Sloan v. Saul, 933 F.3d 946 (8th Cir. 2019).

The issue in this case centers upon the extent to which Jackson's residual functional capacity is impacted by her mental impairments, which she alleges is one of the reasons she became disabled in September of 2015. The impairments, identified as a mood disorder, post-traumatic stress disorder ("PTSD"), and/or attention-deficit/hyperactivity disorder ("ADHD"), have caused her problems for years, and she has sought treatment for the impairments on scores of occasions.

For instance, Jackson at one time received care for her mental impairments from psychiatrist Dr. Henry Good, M.D. ("Good"). In February of 2008, Good completed a Medical Source Statement in which he represented that Jackson has a number of extreme or marked limitations. See Transcript at 388-390. Good represented that the limitations primarily involve Jackson's memory and concentration.

Jackson sought medical care for her physical impairments from Dr. Derek Lewis, M.D. ("Lewis") from what appears to have been October of 2010 through June of 2014. See Transcript at 444-548, 550-601. As a part of Jackson's care, she was also seen for her mental impairments. Lewis' treatment notes reflect that Jackson experienced anxiety and depression, and her symptoms were believed to be severe. She was taking Xanax for her symptoms.

Jackson also sought medical care for her physical impairments at Southwest Family Practice from what appears to have been April of 2015 through at least April of 2020. <u>See</u> Transcript at 34-40, 613-633, 648-662, 898-956, 958-965, 1039-1051, 1068-1172, 1640-1649, 1724-1726. As a part of Jackson's care, she was also seen for her mental impairments. The treatment notes reflect that although she continued to experience anxiety and depression, her psychiatric examinations were oftentimes routine.

Beginning in what appears to have been July of 2016 and continuing through at least September of 2021, Jackson sought care for her mental impairments at Youth Home on a number of occasions from professionals who included psychiatrist Dr. Mark Anderson, M.D. ("Anderson"); Alan Johnston, M.D. ("Johnston"); and therapists Emily Whitley ("Whitley") and Elisha Strayhorn ("Strayhorn"). <u>See</u> Transcript at 41-62, 664-734, 738-778, 780-818, 820-856, 858-895, 966-984, 986-1000, 1003-1038, 1173-1187, 1190-1201, 1253-1424, 1549-1638, 1666-1721.[2] The treatment notes reflect that although Jackson continued to experience anxiety and depression, the severity of her symptoms fluctuated. She was treated with medication and received counseling throughout the period.

---

[2]     Many of the treatment notes from Jackson's presentations at Youth Home are duplicative notes, as are many of the notes from her presentations at Southwest Family Practice.

In April of 2018, Anderson completed a Work Capacities Form on behalf of Jackson. See Transcript at 1211-1217. Anderson represented that Jackson has marked limitations in many areas of memory, concentration, persistence, and pace. Anderson represented that Jackson has "high levels of paranoia," and stimuli include "hospitals or social situations where she thinks someone is out to get her." See Transcript at 1216.

The next day, Whitley completed a Work Capacities Form on behalf of Jackson. See Transcript at 1203-1210. Whitley represented that Jackson has marked limitations in many areas of memory, concentration, persistence, and pace. Whitley represented that Jackson becomes paranoid in "certain social situations," and her anxiety is exacerbated by "hospital-related stimuli." See Transcript at 1208.

An ALJ conducted the first administrative hearing in May of 2018, see Transcript at 63-98, after which Jackson's applications were denied, see Transcript at 13-27. The ALJ assessed Jackson's residual functional capacity and found that she is capable of performing light, unskilled work with additional limitations that include "occasional contact with supervisors, co-workers, and the public." See Transcript at 18. The ALJ found that although Jackson cannot perform her past work, there is other work she can perform.

Jackson pressed her applications to federal court by filing <u>Jackson v.</u>

<u>Saul</u>, No. 4:19-cv-00045-DPM, in January of 2019. United States District

Judge D.P. Marshall Jr. remanded the case in December of 2019 and gave

the following reason for doing so:

> Jackson objects to only one part of the Magistrate Judge's recommendation: that the ALJ handled the treating professionals' (a psychiatrist and a therapist) opinions correctly under precedent. The Court adopts all other parts of the recommendation, which are unopposed. ... On <u>de novo</u> review, the Court sustains Jackson's helpfully focused objection.
>
> The ALJ failed to give good and specific reasons for discounting the treating professionals' opinions. This was error. <u>Walker v. Commissioner, Social Security Administration</u>, 911 F.3d 550, 553 (8th Cir. 2018). The "fill-in-the-box-plus-comments" form of the opinions, their substantial identity, and the close collaborative relationship between the psychiatrist and therapist support treating the two as one. But, precedent requires the ALJ to explain why, with solid particulars, this joint opinion is not controlling. <u>Walker</u>, <u>supra</u>.

<u>See</u> <u>Jackson v. Saul</u>, 2019 WL 7019076, 1.

Upon remand, some additional evidence was offered by Jackson. The

additional evidence included a February of 2020 Work Capacities Form

prepared by Strayhorn on behalf of Jackson. <u>See</u> Transcript at 1657-1664.

Like Anderson and Whitley, Strayhorn represented that Jackson has marked

limitations in many areas of memory, concentration, persistence, and

pace. Strayhorn represented that Jackson is "easily distracted by external stimuli" and "has difficulty with change in routines, weather, expectations, [and] schedules ..." See Transcript at 1662. Strayhorn also represented that the side effects of Jackson's medications cause sleep disturbances.

In March of 2020, Johnston prepared a Work Capacities Form on behalf of Jackson. See Transcript at 1651-1656. Johnston represented that Jackson has only moderate limitations in areas of memory, concentration, persistence, and pace. Johnston represented that Jackson has difficulty coping in "situations with high levels of stress." See Transcript at 1655. Johnston noted, though, that Jackson would benefit from "an independent evaluation from a disability determining physician, which [Johnston] was not." See Transcript at 1656.

Jackson testified during the second administrative hearing that was held in July of 2020. See Transcript at 1460-1473. She was living at the time with her nineteen-year-old son and eleven-year-old daughter. Jackson last worked as a self-employed "yard sale person," see Transcript at 1461, which did not require her to be punctual. She has difficulties with her memory, which cause her to forget about, or otherwise miss, her appointments. When she last worked a job that required her to be

punctual, she had trouble being on time and would sometimes miss work altogether. Jackson has difficulty staying focused and working at a consistent pace because she is easily distracted. She occasionally watches television but has to limit her television viewing because the reporting of unpleasant events has an adverse effect on her. She reads some for pleasure, but she is unable to read for any appreciable length of time because she has difficulty paying attention.

The ALJ assessed Jackson's residual functional capacity and found that she is capable of performing light work with additional limitations that include the following:

> ... [Jackson] can only have occasional contact with [the] general public. The remaining interpersonal contact is only incidental to the work performed, meaning dealing primarily with things instead of people. She can understand, follow, and retain simple instruction and perform simple tasks that require little independent judgment to perform those tasks. She can tolerate occasional changes in a routine work setting.

See Transcript at 1239. In making the assessment, the ALJ gave little weight to Good's medical opinions because, in part, they are remote in time. The ALJ declined to give controlling weight to Anderson and Whitley's opinions, opinions that Judge Marshall found could be treated as one. The ALJ did so for the following reasons:

... Whitley opined that the claimant has marked limitations in her ability to perform activities in a schedule, maintain regular attendance and be punctual within customary tolerances, and complete a normal workday without interruptions from psychologically based symptoms ... This degree of limitation is not supported by the evidence and therefore is accorded little weight. As discussed above, the claimant's primary care physician consistently noted that the claimant's anxiety was controlled with medication, and the claimant also reported that she was doing well on her medication ... Additionally, mental health treatment records also note many periods of stability with medication and therapy ... Even ... Whitley acknowledged that the claimant appeared more stable with treatment ... She described the claimant as focused, engaged, and motivated for treatment ... Subsequent records do not note significant worsening. Even though the claimant was no longer in therapy with ... Whitley, her subsequent therapist ... Strayhorn also noted symptoms that were responsive to treatment, as evidenced by the claimant's mental status examinations describing the claimant as insightful, engaged, thoughtful, and stable ... Furthermore, the claimant has never required inpatient care, or been referred to intensive outpatient treatment. The evidence as a whole does not support ... Whitley's opinion that the claimant is as limited as she opined.

The remainder of the opinion is accorded some weight, as the claimant has some limitations, especially social limitations considering her anxiety that may interfere with her ability to interact with others on more than a superficial basis; however, the remainder of the evidence is not wholly inconsistent with a finding that the claimant can perform simple work tasks.

The claimant's psychiatrist ... Anderson ... completed an almost identical opinion to that of ... Whitley's noted above ... Accordingly, the [ALJ] applies the same analysis to this opinion, noting that controlling weight was not given because the evidence as a whole does not support the degree of marked limitation to which they opined.

See Transcript at 1242. The ALJ gave Johnston's medical opinions "some weight in part," see Transcript at 1242, noting that some of his opinions are supported by the record as a whole and some of them are not. The ALJ gave Strayhorn's opinions little weight because they are inconsistent with her own treatment records and are otherwise inconsistent with the record as a whole. The ALJ found that although Jackson cannot perform her past work, there is other work she could perform.

Jackson maintains that the ALJ failed to comply with the remand order when he did not give good and specific reasons for discounting Good, Anderson, and Whitley's medical opinions. It is Jackson's contention that the ALJ saw his task on remand as simply supplying a reason for discounting their opinions, despite the fact that they are not contradicted by better or more thorough evidence. Jackson additionally maintains that the ALJ erred when he did not give good reasons for disregarding Strayhorn's opinions and when the ALJ completely disregarded Lewis' opinions.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite her limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record. See Jones v. Astrue, 619 F.3d 963 (8th Cir. 2010).

As a part of assessing the claimant's residual functional capacity, the ALJ must weigh the medical opinions in the record. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007). A treating physician's medical opinions are entitled to controlling weight if they are well-supported by the medical evidence and not inconsistent with the other substantial evidence in the record. See Walker v. Commissioner, Social Security Administration, 911 F.3d 550 (8th Cir. 2018). The ALJ may discount a treating physician's medical opinions if other medical assessments are supported by better or more thorough medical evidence or where the treating physician renders inconsistent opinions that undermine the credibility of his opinions. See Choate v. Barnhart, 457 F.3d 865 (8th Cir. 2006). "'Whether the ALJ gives the opinion[s] of a treating physician great or little weight, the ALJ must give good reasons for doing so.'" See Walker v. Commissioner, Social Security Administration, 911 F.3d at 553 (quoting Reece v. Colvin, 834 F.3d 904, 909 (8th Cir. 2016).[3]

---

[3]      The regulations governing the consideration of medical opinions were revised for claims filed on or after March 27, 2017. The revised regulations eliminated the long-standing "treating physician" rule and now provide that the ALJ will not give any specific weight to medical opinions, including the opinions of a treating physician. See Phillips v. Saul, No. 1:19-cv-00034-BD, 2020 WL 3451519 (E.D. Ark. 2020). Instead, the ALJ will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability, consistency, relationship with the claimant, specialization, and any other factor that tends to support or contradict a medical opinion. Here, Jackson's applications were filed prior to March 27, 2017, and the parties agree her applications are governed by the "treating physician" rule.

Having reviewed the ALJ's decision, the undersigned is not prepared to find that he failed to comply with the remand order. He reviewed the relevant evidence and offered reasons for how he weighed the medical opinions in the record. He could find as he did with respect to the opinions, and the reasons are good and specific reasons.

Good's medical opinions. Good offered his medical opinions in a Medical Source Statement that he completed in February of 2008. Jackson alleges that she became disabled in September of 2015, or more than seven years after Good offered his opinions. The ALJ gave little weight to Good's medical opinions, in part, because they are remote in time. Substantial evidence on the record as a whole supports the ALJ's weighing of Good's opinions. Given the more than seven year span between Good's opinions and Jackson's alleged onset date, the ALJ could and did find that the opinions are indeed remote in time.

Anderson and Whitley's medical opinions. Anderson and Whitley opined that Jackson has marked limitations in many areas of memory, concentration, persistence, and pace. The ALJ declined to give controlling weight to Anderson and Whitley's medical opinions, instead giving some of their opinions some weight and their remaining opinions little weight. The ALJ did so because their opinions are inconsistent with their own treatment

notes and otherwise inconsistent with the record as a whole. Although the undersigned likely would have accorded greater weight to Anderson and Whitley's opinions had the undersigned been presented with the question in the first instance, the ALJ could weigh the opinions as he did. Substantial evidence on the record as a whole supports the manner in which the ALJ weighed their opinions.

Anderson and Whitley's treatment notes reflect that Jackson's symptoms were oftentimes severe but were to some extent caused by situational factors. See e.g., Transcript 49, 52, 665, 668, 668, 687, 699, 814, 1174-1175, 1177, 1194, 1200, 1256. There were other times, though, that Jackson's symptoms were moderate as she reported periods of stability aided, in large part, by medication and therapy. See, e.g., Transcript at 665, 781, 796, 859, 890, 893. In fact, at an August of 2016, presentation, Jackson discussed "job opportunities" she was exploring and appeared "motivated to find work and was visiting a staffing agency after [the presentation]." See Transcript at 781. Given such findings and observations, there is more than one acceptable characterization of the notes, and the ALJ's characterization of the notes is one of the acceptable characterizations. The ALJ could therefore find that Anderson and Whitley's opinions are inconsistent with their own notes.

The ALJ could also find that Anderson and Whitley's medical opinions are inconsistent with the record as a whole. For instance, the treatment notes from Jackson's presentations at Southwest Family Practice reflect, inter alia, that the severity of her symptoms fluctuated. Although they were severe at times, they were moderate at other times. See e.g., Transcript at 613, 615, 617, 627, 649, 942-943, 1711-1712, 1726. The notes reflect that many of her psychiatric examinations were routine, and her symptoms were amenable to medication and therapy.

Moreover, Johnston opined in his Work Capacities Form that Jackson has no marked limitations in any areas of memory, concentration, persistence, and pace. Johnston instead opined that Jackson has only moderate limitations in many of those areas, although he acknowledged that she would benefit from a more thorough evaluation by a "disability determining physician." See Transcript at 1656. Johnston's treatment notes also indicate that Jackson's symptoms improved with medication. See e.g., Transcript at 1711-1712.

The ALJ could and did also note that Jackson never required "inpatient care" and was not referred for "intensive outpatient treatment." See Transcript at 1242. Although it is not clear how much weight to accord those matters, the ALJ could properly note them.

Notwithstanding the foregoing, the ALJ did not entirely discount Anderson and Whitley's medical opinions. As the Acting Commissioner of the Social Security Administration correctly points out, the ALJ incorporated portions of their opinions into the assessment of Jackson's residual functional capacity. For instance, the ALJ credited their opinions that Jackson has social limitations and found that she is limited to only "occasional contact with [the] general public" and the "remaining interpersonal contact is only incidental to the work performed, meaning dealing primarily with things instead of people." See Transcript at 1239.

Strayhorn's medical opinions. The first ALJ mis-handled the medical opinions offered by Anderson and Whitley.[4] Strayhorn's medical opinions do not appear to have been a part of the remand in Jackson v. Saul, but the second ALJ nevertheless considered the opinions. The second ALJ's consideration of Strayhorn's opinions undermines Jackson's assertion that the ALJ saw his task on remand as simply supplying a reason for discounting Anderson and Whitley's opinions.

---

[4]     See Jackson v. Saul, No. 4:19-cv-00045-DPM-JJV, 2019 WL 3294182, 2 (E.D. Ark. July 22, 2019) ("... Ms. Jackson argues that the ALJ failed to properly address the opinions of her treatment providers, Mark Anderson, M.D., and Emily K. Whitley, LCSW."), report and recommendation partly adopted and partly declined, No. 4:19-cv-00045-DPM, 2019 WL 7019076, 1 (E.D. Ark. Dec. 19, 2019) ("Jackson objects to only one part of the Magistrate Judge's recommendation: that the ALJ handled the treating professionals' (a psychiatrist and a therapist) opinions correctly under precedent.")

Strayhorn, like Anderson and Whitley, opined that Jackson has marked limitations in many areas of memory, concentration, persistence, and pace. The ALJ gave little weight to Strayhorn's medical opinions because they are inconsistent with her own treatment notes and otherwise inconsistent with the record as a whole. Although the undersigned likely would have accorded greater weight to Strayhorn's opinions had the undersigned been presented with the question in the first instance, the ALJ could weigh the opinions as he did for the same reasons he could and did discount Anderson and Whitley's opinions. Substantial evidence on the record as a whole supports the manner in which the ALJ weighed Strayhorn's opinions.

Lewis' treatment notes. Lewis did not offer what can be characterized as medical opinions; instead, he complied a series of treatment notes from what appears to have been October of 2010 through June of 2014. He primarily saw Jackson for her physical impairments, but his notes also contain his observations about her mental status. The notes reflect that she experienced anxiety and depression, her symptoms were believed to be severe, and she was taking Xanax for the symptoms. The ALJ made no mention of Lewis' observations, but the ALJ's failure to do so does not warrant a remand for two reasons.

First, Lewis' treatment notes appear to be from a period between October of 2010 through June of 2014, or anywhere from five years to eighteen months prior to the alleged onset date. The notes, particularly those from presentations from 2010 through 2013, are somewhat remote in time.

Second, the record reflects that Jackson worked, or otherwise engaged in substantial gainful activity, during the period between 2010 through 2014. See Transcript at 264-278. Although her earnings during the period were certainly not significant, her work history indicates that she had the ability to work despite the mental limitations she was experiencing.

Jackson offers a second reason why the ALJ's decision is not supported by substantial evidence on the record as a whole. Jackson maintains that the ALJ failed to fully account for her mental limitations in crafting a hypothetical question to a vocational expert, the answer to which the ALJ relied upon in finding that Jackson is not disabled. Jackson maintains that the question failed to account for her inability to perform "activities within a schedule or maintain a reasonable pace without excessive breaks," see Docket Entry 14 at CM/ECF 18, a limitation attested to by Good, Anderson, and Whitley.

Testimony from a vocational expert is substantial evidence on the record as a whole only when "the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." See Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997). The question must include all of the claimant's impairments that are substantially supported by the record as a whole. See Id.

A vocational expert testified during the second administrative hearing. See Transcript at 1473-1479. The ALJ posed two hypothetical questions to the expert. In the first question, the ALJ identified a hypothetical individual whose mental limitations were as follows:

> ... The individual can have only occasional contact with the general public, and the remaining interpersonal contact is only incidental to the work performed. And by that, I mean, dealing primarily with things instead of people was part of the job function. The individual could understand, to follow, and retain simple instruction, and perform simple tasks that required little independent judgment to perform those tasks and such individual could tolerate only occasional changes in a routine work setting. ...

See Transcript at 1475. The expert testified that such an individual would be unable to perform Jackson's past work, but there is other work the individual could perform. The ALJ then posed a second question that included the following additional limitation:

> ... this individual, as the result of a combination of medical impairments and the associated symptoms would be off-task or away from the workstation up to 20% of an eight-hour workday, which would include the need to take unscheduled breaks throughout the day. In addition, the individual would call in sick or otherwise miss three or more days of work in any given month on an unscheduled basis. ...

See Transcript at 1475. The expert testified that such an individual would be unable to perform Jackson's past work, and there is no other work the individual could perform.

Jackson's attorney then asked the vocational expert to assume the following limitation as a part of the ALJ's first hypothetical individual's limitations: "difficulty performing activities within a schedule and—and maintaining a—a pace—a reasonable pace without an unreasonable number and length of rest periods." See Transcript at 1478. The expert testified that such an individual would be unable to perform Jackson's past work, and there is no other work the individual could perform.

The ALJ relied upon the answer to the first hypothetical question he posed to the vocational expert, a question that did not include a limitation for an inability to perform activities within a schedule or maintain a reasonable pace without excessive breaks. On the basis of the expert's answer, the ALJ found that there is other work Jackson could perform.

The undersigned is not prepared to find that the ALJ erred in crafting his first hypothetical question, the answer to which he relied upon in finding that Jackson is not disabled. The undersigned so finds because it is open to debate whether Jackson has an inability to perform activities within a schedule or maintain a reasonable pace without excessive breaks. Although Good opined that Jackson has marked difficulties with memory and concentration, see Transcript at 388-390, Good's medical opinion is remote in time. Anderson and Whitley opined that Jackson has marked limitations in many areas of memory, concentration, persistence, and pace, see Transcript at 1211-1217, 1203-1210, but their opinions conflict with Johnston's opinions. Johnston opined, inter alia, that Jackson is only moderately limited with respect to her ability to maintain attention and concentration for extended periods, and she had no limitation with respect to her ability to perform activities within a schedule. See Transcript at 1651-1656. Given the conflicting evidence with respect to Jackson's ability to perform activities within a schedule or maintain a reasonable pace without excessive breaks, it was unnecessary for the ALJ to include the limitation in the question. The limitation was not substantially supported by the record as a whole.

It is for the foregoing reasons that substantial evidence on the record as a whole supports the ALJ's findings, and he did not commit legal error. The undersigned therefore recommends that the ALJ's decision be affirmed. Jackson's complaint should be dismissed, all requested relief should be denied, and judgment should be entered for the Acting Commissioner of the Social Security Administration.

DATED this 31st day of May, 2023.

_____

UNITED STATES MAGISTRATE JUDGE